UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

RENÉ GARCIA, JAVIER FERNÁNDEZ,
CRYSTAL WAGAR, MACK BERNARD
and WILLIAM PROCTOR,

       Plaintiffs,

vs.

**KERRIE J. STILLMAN**, EXECUTIVE DIRECTOR,
FLORIDA COMMISSION ON ETHICS, in her official
capacity; **JOHN GRANT**, CHAIRMAN, FLORIDA
COMMISSION ON ETHICS, in his official capacity;
**GLENTON "GLEN" GILZEAN, JR.**, VICE CHAIRMAN,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; **MICHELLE ANCHORS**, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in her official
capacity; **WILLIAM P. CERVONE**, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; **DON GAETZ**, COMMISSIONER, FLORIDA
COMMISSION ON ETHICS, in his official capacity;
**WILLIAM "WILLIE" N. MEGGS**, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; **ED H. MOORE**, COMMISSIONER,
 FLORIDA COMMISSION ON ETHICS, in his official
 capacity; **WENGAY M. NEWTON, SR.**, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in his official capacity;
**JIM WALDMAN**, COMMISSIONER, FLORIDA COMMISSION
 ON ETHICS, in his official capacity; **ASHLEY MOODY**,
ATTORNEY GENERAL, STATE OF FLORIDA, in her official
capacity; and **JIMMY PATRONIS**, CHIEF FINANCIAL
OFFICER, STATE OF FLORIDA, in his official capacity,

       Defendants.

_____/

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIONS
AND DECLARATORY JUDGMENT**

Plaintiffs René Garcia, Javier Fernández, Crystal Wagar, Mack Bernard and William Proctor ("Plaintiffs") sue Kerrie J. Stillman, in her official capacity as Executive Director of the Florida Commission on Ethics; John Grant, in his official capacity as Chairman of the Florida Commission on Ethics; Glenton "Glen" Gilzean, Jr., in his official capacity as Vice Chairman of the Florida Commission on Ethics; Michelle Anchors, in her official capacity as commissioner on the Florida Commission on Ethics; William P. Cervone, in his official capacity as commissioner on the Florida Commission on Ethics; Don Gaetz, in his official capacity as commissioner on the Florida Commission on Ethics; William "Willie" N. Meggs, in his official capacity as commissioner on the Florida Commission on Ethics; Ed H. Moore, in his official capacity as commissioner on the Florida Commission on Ethics; Wengay M. Newton, Sr., in his official capacity as commissioner on the Florida Commission on Ethics; Jim Waldman, in his official capacity as commissioner on the Florida Commission on Ethics Ashley Moody in her official capacity as Attorney General of the State of Florida, Jimmy Patronis in his official capacity as Chief Financial Officer of the State of Florida (collectively, "Defendants").

This lawsuit presents a constitutional challenge to the unprecedented ban on protected speech in the form of lobbying by any current elected officials, with a 6-year lobbying ban for all former elected officials.  This prohibition is imposed by a provision of the Florida Constitution that becomes effective December 31, 2022.  Because this constitutional provision and its statutory implementation infringe on core First Amendment political speech and impose significant penalties, immediate relief is required while the Court resolves the claims raised. In support of this constitutional challenge, the plaintiffs state:

**<u>INTRODUCTION</u>**

1.      This is an action to vindicate core First Amendment rights of free speech, freedom of association and the right to petition the government for redress of grievances, all of which are

infringed by overly broad and burdensome provisions of the Florida Constitution, Article 2, Section 8(f) and Section 8(h)(2), and certain enabling provisions of Florida Statutes, enacted as Section 112.3122, Fla. Stat. (2022).

2.     In 2018, Florida voters approved revisions to Article II, Section 8 of the Florida Constitution contained in Amendment 12 proposed by the Florida Constitutional Revision Commission that impose unprecedented new restrictions on lobbying by current and former public officers and take effect on December 31, 2022.

3.     Under this amendment to Article II, Section 8, all current "public officers" are prohibited from engaging in compensated lobbying in virtually any capacity.  The ban bars lobbying with "the federal government, the legislature, any state government body or agency, or any political subdivision of this state, during his or her term of office."  Fla. Const., Art. II, § 8(f)(2).  Amendment 12 defines a "public officer" as "a statewide elected officer, a member of the legislature, a county commissioner, a county officer pursuant to Article VIII or county charter, a school board member, a superintendent of schools, an elected municipal officer, an elected special district officer in a special district with ad valorem taxing or other agency head of a department of the executive branch of state government." Fla. Const., Art. II, § 8(f)(1).

4.     The constitutional revisions in Amendment 12 prohibit a public officer from lobbying his or her former agency or office for a period of six years after leaving office. Fla. Const., Art. II, § 8(f)(3). It also extends the lobbying ban to include all Florida agencies in the case of a statewide or legislative officer or executive branch agency head.

5.     The Florida Legislature also enacted an implementing statute that empowers the Florida Commission on Ethics to investigate potential violations of Article II, Section 8. Violations of this section of the Florida Constitution may result in penalties including (1) public

censure and reprimand; (2) a civil penalty of up to $10,000; and (3) forfeiture of any pecuniary benefits received for conduct violating the constitutional provision and statute. Fla. Stat. § 112.3122(4). These penalties may be imposed by the Governor, and both the Attorney General and the Chief Financial Officer are authorized to collect the financial penalties. Fla. Stat. § 112.3122(3) & (5). This statute takes effect on December 31, 2022.

6.     These expansive new restrictions on lobbying profoundly and impermissibly constrain core First Amendment rights of current and former public officials. Lobbying – that is, the practice of directly communicating with government decisionmakers to inform and influence government policy and practice – has long been recognized as conduct entitled to robust protection under the First Amendment. *See, e.g., Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) ("every person or group engaged…in trying to persuade [government] action is exercising the First Amendment right of petition"). Moreover, the U.S. Supreme Court acknowledged "a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 801 (1988) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 265-66 (1964)).

7.     While the term "lobbyist" has unfairly "become encrusted with invidious connotations," *Liberty Lobby*, 390 F.2d at 491, lobbyists are employed not only by private actors but also by nonprofit organizations, advocacy groups, charities and faith-based organizations, and even by governments themselves. Lobbying is essential to ensure the exchange of information and ideas between government decisionmakers and those segments of the public who may be directly impacted by the government's decisions. Lobbying goes to the heart of the democratic process. It is for this very reason that the First Amendment to the United States Constitution

expressly protects the right to petition the government for a redress of grievances, along with the rights to freedom of speech and freedom of assembly.

8.      The new restrictions on lobbying by current and former public officers in Florida contained in Amendment 12 to the Florida Constitution that take effect on December 31, 2022, unjustifiably and unconstitutionally restrict Plaintiffs' core political speech rights, associational rights and rights to petition the government in violation of the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment to the United States Constitution, and also unconstitutionally discriminate against the Plaintiffs in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. These same protections are contained in the Florida Declaration of Rights, Article I, Florida Constitution. Accordingly, Plaintiffs seek declaratory judgment and injunctive relief enjoining Defendants from enforcing against Plaintiffs the provisions set forth in the 2018 amendments to Article 2, Section 8, to the Florida Constitution as implemented by Section 112.3122, of the Florida Statutes (together, the "Advocacy Restrictions"). For the reasons discussed herein, the Advocacy Restrictions are facially unconstitutional and as applied.  They should be declared invalid by this Court.

## THE PARTIES

9.      Plaintiff René Garcia is a Miami-Dade County Commissioner elected in 2020, who previously served as a councilman with the City of Hialeah and as a State Senator and as a member of the Florida House of Representatives. Mr. Garcia is also Executive Vice President of New Century Partnership, LLC, a business consulting firm he co-founded whose services include lobbying and government affairs advisory services.  Mr. Garcia anticipates providing immediate lobbying services to his clients with New Century.

10.     Plaintiff Javier Fernández was elected as Mayor of the City of South Miami in 2022.  Previously, he served as a member of the Florida House of Representatives. Mr. Fernández is an attorney with the law firm Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado, LLP.  As part of his law practice, Mr. Fernández frequently represents clients before county and municipal boards and agencies.

11.     Plaintiff Crystal Wagar is an elected member of the Village Council of Miami Shores, Florida. She is also an employee of the Southern Group, a lobbying and government affairs firm with offices throughout the state of Florida.  As part of her duties with the Southern Group, Ms. Wagar performs lobbying activities within the meaning of Article II, Section 8 of the Florida Constitution and Fla. Stat. § 112.3122, and she intends to continue with those activities after December 31, 2022.  However, the new revisions to the Florida Constitution will not permit Ms. Wagar to continue with her work for Southern Group and remain on the Miami Shores Village Council.

12.     Plaintiff Mack Bernard is a Palm Beach County Commissioner, who previously served as a Delray Beach City Commissioner and as a member of the Florida House of Representatives. Having served as a County Commissioner since 2016, Mr. Bernard, an attorney licensed to practice law in the State of Florida, intends to advocate before Palm Beach County and its agencies commencing two years after the conclusion of his public service, and more immediately with respect to other lobbying activities.

13.     Plaintiff William Proctor is a Leon County Commissioner who, among his many accomplishments, is a minister and professor at Florida Agricultural and Mechanical University (FAMU) in Tallahassee.  Having served as a County Commissioner since 1996, he intends to

6

advocate before Leon County and its agencies starting two years after the conclusion of his public service, and more immediately with respect to other lobbying activities.

14.     Defendant Kerrie J. Stillman is the Executive Director of the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4).  She is a defendant only in her official capacity.

15.     Defendant John Grant is Chairman of the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

16.     Defendant Glenton "Glen" Gilzean, Jr., is Vice Chairman of the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

17.     Defendant Michelle Anchors is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). She is a defendant only in her official capacity.

18.     Defendant William P. Cervone is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

19.     Defendant Don Gaetz is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

20.     Defendant William "Willie" Meggs is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public

trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

21.     Defendant Ed H. Moore is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

22.     Defendant Wengay M. Newton, Sr., is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

23.     Defendant Jim Waldman is a Commissioner on the Florida Commission on Ethics, a commission existing pursuant Fla. Const., Art. II, § 8(h)(1) and Fla. Stat. § 112.320 that is responsible for investigating and issuing public reports on complaints of breach of the public trust by public officers and employees.  The Commission is empowered to investigate alleged violations of Fla. Const., Art. II, § 8(f) and report any such violations to the Governor of the State of Florida for enforcement pursuant to Fla. Stat. § 112.3122(4). He is a defendant only in his official capacity.

24.     Defendant Ashley Moody is the duly elected Attorney General of the State of Florida and is chief legal officer pursuant to Article IV, Section 4(b) of the Florida Constitution. Defendant Moody is empowered to enforce any penalties for violations of Fla. Const., Art. II, § 8(f), pursuant to Fla. Stat. § 112.3122. She is a defendant only in her official capacity.

25.     Defendant Jimmy Patronis is the duly elected Chief Financial Officer of the State of Florida.  Defendant Patronis is empowered to enforce any penalties for violations of Fla. Const., Art. II, § 8(f), pursuant to Fla. Stat. § 112.3122. He is a defendant only in his official capacity.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a) and Federal Rule of Civil Procedure 57 to secure declaratory relief; under 28 U.S.C. § 2202 and Federal Rule of Civil Procedure 65 to secure preliminary and permanent injunctive relief; and under 42 U.S.C. § 1988, to award attorneys' fees and costs.

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## THE ADVOCACY RESTRICTIONS

28.     An examination of the Advocacy Restrictions reveals Florida's glaring disregard for core constitutional principles. Art. II, § 8(f)(1) of the Florida Constitution defines a "public officer" with great breadth:

> (f)(1) For purposes of this subsection, the term "public officer" means a statewide elected officer, a member of the legislature, a county commissioner, a county officer pursuant to Article VIII or county charter, a school board member, a superintendent of schools, an elected municipal officer, an elected special district officer in a special district with ad valorem taxing authority, or a person serving as a secretary, an executive director, or other agency head of a department of the executive branch of state government.

29.     During the time of public service, the officer is prohibited from advocating for clients in a vast array of contexts. Art. II, § 8(f)(2) provides:

> A public officer shall not lobby for compensation on issues of policy, appropriations, or procurement before the federal government, the legislature, any state government body or agency, or any political subdivision of this state, during his or her term of office.

30.     Moreover, following public service, a further prohibition upon advocacy is imposed on public officers for six years:

> A public officer shall not lobby for compensation on issues of policy, appropriations, or procurement for a period of six years after vacation of public position. Fla. Const. Art. II, § 8(f)(3).

31.     For nearly 70 years, the U.S. Supreme Court has expressly recognized that lobbying entails the exercise of fundamental rights protected by the First Amendment. *See, e.g., United States v. Harriss*, 347 U.S. 612 (1954). While lobbyist registration and disclosure regulations have been upheld, Florida's prohibition on political advocacy requires strict scrutiny because it collides with the core values of the First Amendment by burdening Plaintiffs' political speech. *See Fed. Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 464 (2007).

32.     By prohibiting communications regarding "issues of policy, appropriations, or procurement," the Advocacy Restrictions plainly constitute "content-based" restrictions on speech which are subject to strict scrutiny. *See Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 862 (11th

Cir. 2020) (defining a "content-based law [as] one that applies to particular speech because of the **topic discussed** or the idea or message expressed") (emphasis added). Moreover, such content-based restrictions on speech are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Id.* at 868.

33.     The constitutional infirmity of "overbreadth" ascends to its zenith when core First Amendment rights are at issue, as here. Under this expansive First Amendment doctrine, a law is facially invalid if it punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep. Additionally, under this doctrine, a party may bring a claim under the First Amendment even if the statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270-71 (11th Cir. 2006). In the First Amendment context, even if a law recites some legitimate scenarios for restriction, it may nevertheless be unconstitutional as a whole. If successful, an overbreadth challenge could potentially invalidate some or all of Amendment 12.

34.     The Advocacy Restrictions contained in Art. II, § 8(f) and Fla. Stat. § 112.3122 are extraordinary. Under Amendment 12, a local elected official, such as a school board member, is prohibited from lobbying before Congress or a federal agency, even on matters wholly unrelated to the official's role with local government. Similarly, the new restrictions would prohibit a city commissioner with a municipality in Palm Beach County from advocating in Orange County or elsewhere. A public official who works as a legislative affairs representative for a union or public hospital district would be barred from lobbying the Legislature even on issues outside the scope of their elected offices.

35.     While the State of Florida has a legitimate interest in preventing *quid pro quo* corruption and the appearance of *quid pro quo* corruption, its regulations cannot be designed to regulate lobbying or political access for their own sake, because, as the Supreme Court has held, political access is "not corruption." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 192 (2014).  The revisions to Art. II, § 8 of the Florida Constitution contained in Amendment 12 sweep too broadly and impermissibly restrict substantial, legitimate First Amendment activity. Very plainly, it is a far cry from legislation that is tailored narrowly in its restrictions upon potential political speech.

36.     Because of its extraordinary scope, Amendment 12 cannot survive a strict scrutiny analysis – or even an examination under the lesser standard of exacting scrutiny.

37.     The six-year "revolving door" lobbying ban contained in the revisions to the Florida Constitution is also unprecedented and unconstitutional.  Plaintiffs do not argue that the concept of a "revolving door" ban is *per se* unconstitutional; indeed, a far more limited ban may withstand strict scrutiny. A shorter-term prohibition on lobbying immediately after leaving office to prevent former officials from taking advantage of the contacts, associations, and special knowledge they acquired during their tenure as public servants arguably could be narrowly tailored to serve a compelling state interest.

38.     Indeed, some states have adopted one- to two-year revolving door bans for compensated lobbying. Similarly, United States Senators have a two-year revolving ban (limited to lobbying Congress), and Representatives have a similar one-year lobbying ban.

39.     Significantly, there is apparently no jurisdiction in the United States with a comparable six-year revolving door ban. The Advocacy Restrictions added to the Florida Constitution are three times as long as the revolving door policies of any other state.  According

to the National Conference of State Legislatures, which publishes an online list of revolving-door statutes, no state has more than a two-year prohibition on lobbying by former officials.  (Florida previously had a two-year restriction before the Amendment 12 restrictions were enacted.)  Only eight states have a restriction as long as two years.  *See* https://www.ncsl.org/research/ethics/50-state-table-revolving-door-prohibitions.aspx.

40.     A six-year ban is equal to three election cycles for many elected public officers. Under a strict scrutiny analysis, there are less restrictive means available to prevent undue influence or the appearance of undue influence, such as by prohibiting lobbying on matters that were before the government body with which the former officer previously served.  Florida's former two-year ban on lobbying by former officials was already among the strictest such regulations in the United States.

41.     In addition to these patent and egregious constitutional violations, the Advocacy Restrictions create a chilling and deterrent effect on public service in state and local government. Public service is already exacting enough for those willing to make the commitment to hold public office, and it is already far from easy to attract honorable candidates to dedicate their time to public service.  Moreover, many elected offices in Florida are part-time positions, allowing public servants to be gainfully employed in other capacities.  Ms. Wagar, for instance, earns just $1 a year as a Miami Shores commissioner.  A constitutional provision that destroys careers and livelihoods by unnecessary and overbroad restrictions is manifestly contrary to the public interest.

## COUNT I
### DECLARATORY JUDGMENT AND INJUNCTION
**(Pursuant to 28 U.S.C. § 2201, *et seq.*, Fed. R. Civ. P. 57 and
28 U.S.C. § 2202 and Fed. R. Civ. P. 65)**

42.     Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

43.     The Advocacy Restrictions impermissible burden Plaintiffs' core political speech rights, associational rights and petitioning rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

44.     The Advocacy Restrictions prohibiting Plaintiffs from lobbying on issues of policy, appropriation, or procurement before any state or local government in Florida, or any federal agency, irrespective of any connection to their public offices, impermissibly infringe upon the core political speech rights, associational rights and petitioning rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

45.     By prohibiting Plaintiffs from lobbying their respective former agencies or government bodies on issues of policy, appropriations or procurement for the unreasonably long period of six years, the Advocacy Restrictions impermissibly infringe upon the core political speech rights, associational rights and petitioning rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

46.     The Advocacy Restrictions are also overbroad and not narrowly tailored to serve any compelling state interest.  For example, under the Advocacy Restrictions a former member of the Legislature is not only prohibited from lobbying the Legislature for a period of six years after leaving office, but is also barred from lobbying any department or agency of the state government for six years.  Such onerous and overbroad restrictions are not narrowly tailored to serve a compelling state interest, and they impermissibly chill core political speech.

47.     As a direct result of the terms of the Advocacy Restrictions, Plaintiffs, and many others, face irreparable injury and will continue in the future to suffer irreparable injury, in that they have and will be deprived of their core political speech rights, associational rights and

petitioning rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

48.     There is an actual controversy between the parties, as the Advocacy Restrictions contained in Article II, § 8 of the Florida Constitution and the penalties contained in the enabling statute, Fla. Stat. § 112.3122, create adverse legal interests between the Plaintiffs and Defendants, and present a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

49.     To prevent further infringement or restrictions upon the constitutional rights of Plaintiffs and others, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring Article II, § 8(f)(1)-(3) of the Florida Constitution unconstitutional.

50.     The constitutional considerations involved in this challenge favor the relief requested, for which plaintiffs have a substantial likelihood of prevailing.

51.     The interests of the State of Florida and its citizens are furthered by the relief requested that protects the guarantees of the First Amendment.

52.     The public interest is not disserved by the requested relief.

53.     Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a preliminary and permanent injunction enjoining the Defendants from enforcing the Advocacy Restrictions contained in Article II, § 8(f)(1)-(3) and the enforcement provisions contained in Fla. Stat. § 112.3122.

<u>COUNT II</u>
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION
(42 U.S.C. § 1983)**

54.     Plaintiffs incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

55.     All acts alleged herein of the Defendants and their agents, servants, employees, or persons acting at its behest or direction, were done and are continuing to be done under the color of state law.

56.     As a further direct and proximate result of Defendants' actions, Plaintiffs have suffered additional compensable injury in the nature of constitutional deprivation.

57.     The Advocacy Restrictions and the policy, practice and custom (and the implementation thereof by the Defendants) violate Plaintiffs' core political speech rights, associational rights and petitioning rights under the First Amendment, as incorporated against Defendants by the Fourteenth Amendment, and their rights to equal protection of the laws protected by the Fourteenth Amendment.

58.     As a proximate result of Defendants' actions, Plaintiffs have been irreparably injured, and, together with others seeking to exercise their constitutional rights, will continue to be irreparably injured in the future, in that they have been and will continue to be deprived of their rights to free speech and association and their rights to petition the government under the First and Fourteenth Amendments to the Constitution.

59.     The constitutional considerations involved in this challenge favor the relief requested, for which plaintiffs have a substantial likelihood of prevailing.

60.     The interests of the State of Florida and its citizens are furthered by the relief requested that protects the guarantees of the First Amendment.

61.     The public interest is not disserved by the requested relief.

WHEREFORE, Plaintiffs pray for judgment against Defendants and that the Court:

A.     Declare Article II, § 8(f)(1)-(3) of the Florida Constitution to be in violation of the United States Constitution;

B.     Preliminarily and permanently enjoin Defendants from enforcing Article II, § 8(f)(1)-(3) of the Florida Constitution and Fla. Stat. § 112.3122 against Plaintiffs and others similarly situated;

C.     Enter a judgment against Defendants for compensatory damages in an amount to be determined at trial;

D.     Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees; and

E.     Grant such other and further relief as the Court deems equitable, just and proper.

Dated: December 21, 2022.

Respectfully submitted,

**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive
Penthouse One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

By:  */s/ Kendall Coffey*
     **Kendall Coffey, Esq.**
     Florida Bar No. 259861
     **Scott Hiaasen, Esq.**
     Florida Bar No. 103318
     kcoffey@coffeyburlington.com
     shiaasen@coffeyburlington.com
     lperez@coffeyburlington.com
     service@coffeyburlington.com

**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3105
100 S.E. 2 Street
Miami, Florida 33131-2154
Telephone: (305) 789-5989
Facsimile: (305) 789-5987

By:  */s/ Benedict P. Kuehne*
     **Benedict P. Kuehne, Esq.**
     Florida Bar No. 233293
     ben.kuehne@kuehnelaw.com
     efiling@kuehnelaw.com

18

**RONALD L. BOOK, P.A.**
4000 Hollywood Blvd., Suite 677-S
Hollywood, Florida 33021-6751
Telephone: (305) 935-1866

By:＿＿＿*/s/ Ron Book*＿＿＿＿＿＿＿
       **Ronald L. Book, Esq.**
       Florida Bar No. 257915
       ron@rlbookpa.com

**RHF LAW FIRM, LLC**
2600 S. Douglas Road, Suite 305
Coral Gables, Florida 33134
Telephone: (305) 501-5011

By:＿＿＿*/s/ Robert Fernandez*＿＿＿＿＿＿
       **Robert H. Fernandez, Esq.**
       Florida Bar No. 91080
       rfernandez@rhflawfirm.com