UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:22-cv-24156-Bloom

RENÉ GARCIA, JAVIER FERNÁNDEZ,
CRYSTAL WAGAR, MACK BERNARD
and WILLIAM PROCTOR,
     Plaintiffs,
vs.

KERRIE J. STILLMAN, EXECUTIVE DIRECTOR,
FLORIDA COMMISSION ON ETHICS, in her official
capacity; JOHN GRANT, CHAIRMAN, FLORIDA
COMMISSION ON ETHICS, in his official capacity;
GLENTON "GLEN" GILZEAN, JR., VICE CHAIRMAN,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; MICHELLE ANCHORS, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in her official
capacity; WILLIAM P. CERVONE, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; DON GAETZ, COMMISSIONER, FLORIDA
COMMISSION ON ETHICS, in his official capacity;
WILLIAM "WILLIE" N. MEGGS, COMMISSIONER,
FLORIDA COMMISSION ON ETHICS, in his official
capacity; ED H. MOORE, COMMISSIONER,
 FLORIDA COMMISSION ON ETHICS, in his official
 capacity; WENGAY M. NEWTON, SR., COMMISSIONER,
 FLORIDA COMMISSION ON ETHICS, in his official capacity;
JIM WALDMAN, COMMISSIONER, FLORIDA COMMISSION
 ON ETHICS, in his official capacity; ASHLEY MOODY,
ATTORNEY GENERAL, STATE OF FLORIDA, in her official
capacity; and JIMMY PATRONIS, CHIEF FINANCIAL
OFFICER, STATE OF FLORIDA, in his official capacity,
     Defendants.
_____/

**RENEWED MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
WITH NOTICE, WITH INCORPORATED MEMORANDUM OF LAW;
REQUEST FOR EXPEDITED RELIEF; REQUEST FOR HEARING**

Plaintiffs renew their motion for preliminary injunctive relief in accordance with this Court's Order (DE7) denying the motion without prejudice with leave to renew after the defendants have been served. The defendants have been served (DE8-17). Accordingly, plaintiffs seek entry of a preliminary injunction with notice to the defendants pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. The relief requested is a temporary injunction to be made permanent that precludes enforcement, effective December 31, 2022, of Article II, § 8(f)(1)-(3) of the Florida Constitution and Fla. Stat. § 112.3122 (collectively referred to as the "Anti-Lobbying Amendment") against plaintiffs and others similarly situated during the pendency of this case. Plaintiffs seek a hearing for one (1) hour on the motion.

Because the Anti-Lobbying Amendment is effective on December 31, 2022, expedited consideration and decision are consistent with the interests of justice. Preliminary injunctive relief is needed during the pendency of this litigation because enforcement of the Anti-Lobbying Amendment will cause immediate and irreparable harm to the plaintiffs, all other similarly situated persons, and the citizens of the State of Florida through the quashing of protected core First Amendment political speech. Plaintiffs have no

adequate remedy at law to obtain the immediate and effective protection of their First Amendment rights. Plaintiffs have a substantial likelihood of prevailing on the merits. A preliminary injunction will not harm the defendants, the State of Florida, or the public. The granting of injunctive relief is in furtherance of and not adverse to the public interest. This motion is supported by the declarations appended to the motion.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b), plaintiffs ask the Court to schedule a one-hour hearing on this motion (in person or by Zoom). A hearing will be helpful to the Court in determining whether to grant a preliminary injunction to stay the Anti-Lobbying Amendment pending the outcome of this litigation. Significant First Amendment protections are at issue, resulting in a serious loss of allowable political speech through the enforcement of the Amendment. Staying the effective date of the Florida law will promote the guarantee of free speech, will continue the status quo, does not harm the defendants or the public, and is consistent with the public interest in the broadest application of First Amendment freedoms. A hearing will

provide a meaningful opportunity to amplify the presentation of the plaintiffs' claims and enable the Court to be fully informed.

**<u>INTRODUCTION</u>**

1.      This litigation seeks to vindicate core First Amendment rights of free speech, freedom of association, and the right to petition the government for redress of grievances, all of which are infringed by the overbroad and burdensome provisions of Florida Constitution, Article 2, Section 8(f) and Section 8(h)(2), and certain enabling provisions of Florida Statutes, enacted as Section 112.3122, Fla. Stat. (2022). The Florida Constitutional provision is incorporated as Attachment A. The Florida Statute is incorporated as Attachment B.

2.      The Anti-Lobbying Amendment imposes unprecedented restrictions on lobbying by current and former public officers, effective December 31, 2022.

3.      Article II, Section 8, prohibits all current Florida "public officers" from engaging in compensated lobbying in virtually every capacity. This includes lobbying with "the federal government, the legislature, any state government body or agency, or any political subdivision of this state, during his or her term of office." Fla. Const., Art. II, § 8(f)(2). This provision of the Florida Constitution defines a

"public officer" as "a statewide elected officer, a member of the legislature, a county commissioner, a county officer pursuant to Article VIII or county charter, a school board member, a superintendent of schools, an elected municipal officer, an elected special district officer in a special district with ad valorem taxing or other agency head of a department of the executive branch of state government." Fla. Const., Art. II, § 8(f)(1).

4.    These revisions to the Florida Constitution impose an unprecedented six-year prohibition for a public officer from lobbying his or her former agency after leaving office. Fla. Const., Art. II, § 8(f)(3). They extend the lobbying ban to include all Florida agencies in the case of a statewide or legislative officer or executive branch agency head.

5.    The Florida Legislature implemented these constitutional revisions by empowering the Florida Commission on Ethics to investigate potential violations of the Anti-Lobbying Amendment. Violations may result in career and reputational harm through penalties including (1) public censure and reprimand, (2) a civil penalty of up to $10,000, and (3) forfeiture of any pecuniary benefits received for conduct violating the Amendment. Fla. Stat. §

112.3122(4). These penalties may be imposed by the Governor, and both the Attorney General and the Chief Financial Officer are authorized to collect the financial penalties. Fla. Stat. § 112.3122(3) & (5). This statute also takes effect on December 31, 2022.

**FACTUAL BACKGROUND/THE RESTRICTIONS**

6.    The impact of the lobbying restrictions profoundly and impermissibly constrains core First Amendment rights of current and former public officials. All plaintiffs are elected officials who will be severely impacted by the restrictions, despite that they served the public interest during their public service and are now foreclosed from engaging in constitutionally protected speech and, in some instances, from earning a living in the lawful and time-tested government relations profession.

7.    Incorporating paragraphs 9-13 of the Complaint (DE1), the plaintiffs currently are involved and intend to participate in allowable lobbying activities that will be dramatically curtailed or altogether eliminated once the Anti-Lobbying Amendment goes into effect. Each plaintiff will be stifled and unable to engage in protected political speech. The result of this termination and limitation is a significant loss in their freedoms guaranteed by the U.S. Constitution and

Florida's Declaration of Rights.

8.     As demonstrated in the Declarations attached to the motion, plaintiffs have real, practical, and fair needs to maintain the status quo pending the resolution of this constitutional challenge.

9.     Consider that Miami-Dade Commissioner Rene Garcia (Attachment C) has been elected to and has held municipal, county, and state offices. He has always observed Florida's lobbying requirements. He has been able to carefully balance his duties as an elected official with his allowable First Amendment free speech in matters of governmental relations. He has never run afoul of any lobbying restrictions. As a part-time elected official, he works in the private sector as a business consultant whose services include lobbying and government affairs advisory services, offering guidance to both private individuals and entities as well as public institutions. His firm routinely engages in First Amendment protected speech in the form of lobbying as a mechanism to introduce important information to public officials and educate governments about matters within the scope of their responsibilities. He intends to continue that practice. Those allowable activities have not been the subject of restrictions that imperil Commissioner Garcia's First

Amendment speech. The Anti-Lobbying Amendment will restrict his actions due to his current service to the public as an elected County Commissioner. That consequence is unfair, unreasonable, and inconsistent with the public interests served by reasonable lobbying restrictions.

10.   Plaintiff Javier Fernandez (Attachment D) is similarly situated as a municipal mayor and former member of the Florida House of Representatives. As a lawyer with an active practice of representing clients in matters with government agencies, his ability to provide meaningful representation to his clients will be eviscerated by the Anti-Lobbying Amendment. Not only that, but his entire law firm could be required by application of the law to cease and desist its lobbying activities because of the broad application of the prohibition that imputes the work of lawyers in his firm to him for purposes of compliance. The Florida Commission on Ethics, in Opinion CEO 09-10 (June 17, 2009), explained that all lawyers in a law firm effectively represent every client, such that a County Commissioner's law firm cannot engage in client representation in matters for which the commissioner would be prohibited from involvement. Accordingly, the government advocacy of Mayor

Fernandez and his law firm could be severely restricted in a manner that truncates his free speech and equal treatment under the law.

11.   Crystal Wagar (Attachment E), a municipal elected official who earns $1 annually for her public service, is engaged fulltime with a respected lobbying and government affairs company providing representation to clients in Florida and federal matters. Council Member Wagar has long performed allowable lobbying activities within the meaning of the Anti-Lobbying Amendment. The new revisions to the Florida Constitution will not permit her to continue with her work for Southern Group while remaining on the Miami Shores Village, forcing her to either resign the position to which the public elected her or to cease and desist earning a living through constitutionally protected government advocacy as she continues to serve the public interest. The effect on plaintiff Wagar is immediate and dire, resulting in her continued elected service under a real threat of prosecution and punishment.

12.   Plaintiffs Mack Bernard (Attachment F) and William Proctor are equally adversely impacted by the Anti-Lobbying Amendment, causing both to fear engaging in allowable and

constitutionally protected political speech in ways that severely limit their decision making and careers.

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish (1) a substantial likelihood of success on the merits, (2) an irreparable injury will result unless the injunction issues, (3) that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and (4) that the injunction is not contrary to the public interest. *NetChoice, LLC v. Attorney Gen., Florida*, 34 F.4th 1196, 1209 (11th Cir. 2022) (internal citation omitted); *United States v. Florida*, 870 F. Supp. 2d 1346, 1348 (N.D. Fla. 2012) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005).

The movant (plaintiffs here) has the burden of persuasion on each of the elements. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "Likelihood of success on the merits is

generally the most important factor." *NetChoice*, 34 F.4th at 1209 (internal citation omitted). To that end, a "substantial likelihood of success on the merits" requires "only likely or probable, rather than certain, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d at 1232.

Applying these standards, entry of a preliminary injunction is fully warranted on or before December 31, 2022.

## I.   PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.   Plaintiffs Are Substantially Likely to Prevail on Their First Amendment Infringement Claim.

The revisions to Florida's Constitution are facially unconstitutional. As a result, plaintiffs are likely to succeed on their claims. Lobbying the government is protected political speech under the First Amendment. *See F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990); *see also Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) ("every person or group engaged...in trying to persuade [government] action is exercising the First Amendment right of petition"); *Autor v. Pritzker*, 740 F.3d 176, 182 (D.C. Cir. 2014) ("registered lobbyists are protected by the First Amendment right to petition"). Accordingly, restrictions on

government lobbying must not intrude upon the First Amendment rights of lobbyists.

Here, the lobbying restrictions taking effect on December 31, 2022, impermissibly infringe upon the First Amendment rights of the plaintiffs and other similarly situated public officials and must be deemed unenforceable.

The Anti-Lobbying Amendment, beginning with Article II, Section 8(f)(2) of the Florida Constitution, prohibits a public officer from lobbying "on issues of policy, appropriations, or procurement before the federal government, the legislature, any state government body or agency, or any political subdivision of this state, during his or her term of office." Similarly, Section 8(f)(3) prohibits former public officers from lobbying for six years "on issues of policy, appropriations, or procurement." These provisions are referred to throughout this motion as "Advocacy Restrictions." They are undeniably content-based restrictions on speech, since they regulate speech based on the "issues" it addresses – i.e., the content of the speech. The Eleventh Circuit precedent on this very point is clear: "A content-based law is one that 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *Otto v. City*

*of Boca Raton, Florida*, 981 F.3d 854, 862 (11th Cir. 2020) (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)).

The significance of this restriction cannot be overstated. The Supreme Court declared, "above all else the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). The legal principle was aptly framed by the Eleventh Circuit: "Forbidding the government from choosing favored or disfavored messages is at the core of the First Amendment's free-speech guarantee." *Otto*, 981 F.3d at 862. For this reason, "regulations that are grounded in the content of speech, and that allow the government to discriminate on the basis of the content of that speech, cannot be tolerated under the First Amendment." *Id.* Content-based speech restrictions such as those contained in the revisions to the Florida Constitution therefore "must receive strict scrutiny." *Id.* at 861.[1]

Not only are the Advocacy Restrictions content-based

---

[1] Content-based restrictions on the right to petition the government are also subject to strict scrutiny. *See Seum v. Osborne*, 348 F.Supp.3d 616, 631 (E.D. Ky. 2018); *Am. Civil Liberties Union of New Jersey v. New Jersey Election Law Enf't Comm'n*, 509 F. Supp. 1123, 1128-29 (D.N.J. 1981).

proscriptions on speech, they specifically target "core political speech" that is entitled to the greatest protection under the First Amendment. "[I]nteractive communication concerning political change...is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 422 (1988). Communications between the government and a lobbyist concerning "issues of policy, appropriations, or procurement" certainly meet the definition of "core political speech." Regulations of "core political speech" also must withstand strict scrutiny. *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002).

Under a strict scrutiny analysis, "content based restrictions are presumptively unconstitutional." *Otto*, 981 F.3d at 868 (citing *Reed*, 576 U.S. at 163). Such restrictions can be "justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* Few government regulations can meet this exceedingly high standard, *id.* at 868 n.6, and certainly the state's lobbying restrictions do not.

The only government interest that could potentially be served by the Advocacy Restrictions is the prevention of *quid pro quo* corruption or the appearance of *quid pro quo* corruption. *See*

*McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 192 (2014) ("[a]ny regulation must…target what we have called '*quid pro quo*' corruption or its appearance"). But that purpose does not empower a broadly worded prohibition that effectively shuts off all access to political speech. It is far from the narrowly tailored remedy that defines a prohibition that cuts to the core of corruption. The restriction sweeps too broadly and impermissibly restricts substantial, legitimate First Amendment activity. Very plainly, it is a far cry from legislation that is tailored narrowly in its restrictions on political speech.

If the intent of the law is to prevent *quid pro quo* corruption or the appearance of *quid pro quo* corruption, as it most certainly must be to withstand strict scrutiny, professional lobbying cannot be restricted more severely than other lobbying or governmental advisory services. The carve-out in the definition of "lobbying for compensation" in the implementing statute states a private actor is not lobbying for compensation so long as he or she is not "principally employed for government affairs …" That distinction without a material difference underscores the overbroad reach for the purpose of rooting out corruption. The Supreme Court said it best in *McCutcheon*, 572 U.S. at 192 (citing *Citizens United v. Federal*

*Election Comm'n*, 558 U.S. 310, 360, 130 S. Ct. 876 (2010)):

> We have said that government regulation may not target
> the general gratitude a candidate may feel toward those
> who support him or his allies, or the political access such
> support may afford. "Ingratiation and access … are not
> corruption."

Because the Anti-Lobbying Amendment is not narrowly
restricted to encompass only what is needed to accomplish its
purpose, it does not withstand strict scrutiny. Accordingly, plaintiffs
are substantially likely to prevail on the merits.

## II.   Plaintiffs Have a Clear Right to Relief Against the Defendants.

Plaintiffs, all public officials personally impacted by the Anti-
Lobbying Amendment, have standing to seek relief. Their specific
interest is personal, professional, and pecuniary.

As addressed by the district court in *Dream Defs. v. DeSantis*,
553 F. Supp. 3d 1052, 1071 (N.D. Fla. 2021), to establish standing,
plaintiffs must show (1) that they have suffered an injury-in-fact that
is (2) traceable to the defendants and that (3) can likely be redressed
by a favorable ruling. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555,
560–61, 112 S. Ct. 2130 (1992); *CAMP Legal Def. Fund, Inc. v. City of
Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that

courts have an "independent obligation ... to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute").

Plaintiffs have standing to challenge the Anti-Lobbying Amendment due to its immediate application to each of them and its direct adverse impact on them. This lawsuit is germane to plaintiffs, whose duties and responsibilities include lobbying government interests in their private capacities. They are ideally suited to challenge the overbroad reach of the Anti-Lobbying Amendment.

Florida law embraces the right of citizens to sue when they are affected by statutory enactments. *Sancho v. Smith*, 830 So. 2d 856, 864 (Fla. 1st DCA 2002) ("Citizens who are adversely affected by the exemption in section 101.161(1), Florida Statutes (2000) can make the argument for themselves."). *See also Crawford v. Gilchrist*, 64 Fla. 41, 59 So. 963, 967 (1912) (recognizing standing of Governor as citizen and elector, inter alia, in suit challenging proposed constitutional amendment).

### III.   Plaintiffs Are Irreparably Injured and Have No Adequate Remedy at Law.

Absent prompt relief from this court, plaintiffs have no remedy whatsoever to vindicate their right to participate in the guarantee of freedom enshrined in the First Amendment. Just like every other citizen and organization in the United States, they have a right to engage in political speech so long as it does not interfere with any over-arching public policy. Even then, the restrictions must be far narrower than the broadside prohibition imposed by the Anti-Lobbying Amendment.

Once deprived of their speech or required to resign their public offices or terminate their employment, the plaintiffs will have no effective remedy to restore them to the status they occupied before implementation of the unconstitutional restrictions. These rights and benefits, once lost, are gone forever, depriving them of any meaningful remedy and creating an irreparable injury to them and to all others similarly situated, as well as the citizens who have voted them into office to serve the public interest. The concrete and substantial injuries to the plaintiffs cannot be undone.

If Florida's ethics and elected officials do not take the immediately available efforts to narrow and limit the Anti-Lobbying Amendment, the plaintiffs will lose their freedom to practice their

precious First Amendment guarantees. Subsequent monetary damages cannot compensate for their loss of the right to free speech.

### IV.    The Balance of Equities Favors the Requested Relief.

The balance of equities likewise favors plaintiffs. All hardships and disabilities will be solely borne by the plaintiffs and all others similarly situated due to the immediacy of the Anti-Lobbying Amendment. No Florida interest is harmed by holding the Amendment in abeyance pending the outcome of this litigation. Nor will the public or the public interest suffer in any meaningful way during the pendency of this litigation.

Above all, these plaintiffs have significant histories of serving the public interest with nary a blemish on their government records. That status as righteous holders of the public's confidence undermines any speculation that harm will result if these officials are able to practice the broad, existing contours of free speech while continuing to discharge their obligations and duties to the Constitutions and laws of the United States and the State of Florida, as they committed when taking their oaths of office. Plainly, their interests outweigh any possible harm to the public.

### V.    The Public Interest Is Furthered.

The public interest would benefit substantially by the issuance of the requested relief. Allowing all elected officials to enjoy the protections of free speech advances the public interest, and further solidifies the ability of good and decent public officials to continue in their elected positions.

## VI.   No Bond Should Be Required.

No monetary bond is needed here as a condition of injunctive relief. Plaintiffs are public officials who have been called by the electors to serve the public interest. Their ability to function as public officials while continuing to earn a living provides no benefit to them different from the First Amendment freedoms enjoyed by all Floridians. If any bond is required, a modest bond of $1,000.00 should protect the public interest. *See, e.g., Tancogne v. Tomjai Enters. Corp.*, 408 F.Supp.2d 1237, 1252 (S.D. Fla. 2005) (court has discretion to waive bond requirement).

## CONCLUSION

The interests of justice favor the granting of preliminary injunctive relief to stay enforcement of the Anti-Lobbying Amendment pending the outcome of this litigation.

Dated:       December 27, 2022.

Respectfully submitted,

**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive
Penthouse One
Miami, FL 33133
Tel: (305) 858-2900
Fax: (305) 858-5261

By: _/s/ Kendall Coffey_
    **Kendall Coffey**
    Florida Bar No. 259861
    **Scott Hiaasen**
    Florida Bar No. 103318
    kcoffey@coffeyburlington.com
    shiaasen@coffeyburlington.com
    lperez@coffeyburlington.com
    service@coffeyburlington.com

**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3105
100 S.E. 2 Street
Miami, FL 33131-2154
Tel: (305) 789-5989
Fax: (305) 789-5987

By: _/s/ Benedict P. Kuehne_
    **Benedict P. Kuehne**
    Florida Bar No. 233293
    ben.kuehne@kuehnelaw.com
    efiling@kuehnelaw.com

**RONALD L. BOOK, P.A.**
4000 Hollywood Blvd., Suite 677-S
Hollywood, FL 33021-6751
Tel: (305) 935-1866

By: _/s/ Ron Book_
    **Ronald L. Book**
    Florida Bar No. 257915
    ron@rlbookpa.com

**RHF LAW FIRM, LLC**
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
Tel: (305) 501-5011

By: _/s/ Robert Fernandez_
    **Robert H. Fernandez**
    Florida Bar No. 91080
    rfernandez@rhflawfirm.com

## CERTIFICATE OF SERVICE

I certify on December 27, 2022, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not

authorized to receive electronically Notices of Electronic Filing.

By:   *S/ Benedict P. Kuehne*
      **BENEDICT P. KUEHNE**

## SERVICE LIST

**Kendall Coffey**
Florida Bar No. 259861
**Scott Hiaasen**
Florida Bar No. 103318
kcoffey@coffeyburlington.com
shiaasen@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive
Penthouse One
Miami, FL 33133
Tel: (305) 858-2900
Fax: (305) 858-5261

**Benedict P. Kuehne**
Florida Bar No. 233293
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com
**KUEHNE DAVIS LAW, P.A.**
Miami Tower, Suite 3105
100 S.E. 2 Street
Miami, FL 33131-2154
Tel: (305) 789-5989
Fax: (305) 789-5987

**Ronald L. Book**
Florida Bar No. 257915
ron@rlbookpa.com
**RONALD L. BOOK, P.A.**
4000 Hollywood Blvd., Suite 677-S
Hollywood, FL 33021-6751
Tel: (305) 935-1866

**Robert H. Fernandez**
Florida Bar No. 91080
rfernandez@rhflawfirm.com
**RHF LAW FIRM, LLC**
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
Tel: (305) 501-5011

**Steven J. Zuilkowski**
Florida Commission on Ethics
Building E, Suite 200
325 John Knox Road
Tallahassee, FL 32302-4113
zuilkowski.steven@leg.state.fl.us

**Michael B. Dobson**
Florida Department of Financial
Services
200 E Gaines Street
Tallahassee, FL 32399-6502

michael.dobson@myfloridacfo.com
**Henry C. Whitaker**
Florida Solicitor General
PL-01, The Capitol
Tallahassee, FL 32399-1050
henry.whitaker@myfloridalegal.