UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-24156-BLOOM/Otazo-Reyes**

RENÉ GARCIA, *et al.*,

     Plaintiffs,

v.

KERRIE J. STILLMAN, *et al.*,

     Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss, ECF No. [44] ("Motion"), filed on January 31, 2023. Plaintiffs filed a Response, ECF No. [47], to which Defendants filed a Reply. ECF No. [50]. The Court has carefully considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I.    INTRODUCTION

On December 21, 2022, Plaintiffs René Garcia, Javier Fernández, Crystal Wagar,[1] Mack Bernard, and William Proctor initiated this case against Florida Attorney General Ashley Moody, Florida Chief Financial Officer Jimmy Patronis, and the following members of the Florida Commission on Ethics: Kerrie Stillman, John Grant, Glenton Gilzean, Jr., Michelle Anchors, William Cervone, Don Gaetz, William Meggs, Ed Moore, Wengay Newton, and Jim Waldman ("Defendants"). ECF No. [1]. In their Complaint, Plaintiffs assert facial and as-applied

---

[1] On February 14, 2023, Plaintiffs dropped Crystal Wagar as a party because she resigned from her public office as an elected member of the Miami Shores Village Council on December 30, 2022, the day before the challenged laws went into effect. *See* ECF No. [48] at 2.

constitutional challenges to Article 2, Section 8(f) and 8(h)(2) of the Florida Constitution (the "Anti-Lobbying Amendment") and Fla. Stat. §§ 112.3121-112.3122 (the "Implementing Statutes"). *Id*. The Court will refer to the Anti-Lobbying Amendment and Implementing Statutes in combination as the "Lobbying Restrictions."

The Anti-Lobbying Amendment was enacted on November 6, 2018, after 78.9% of Floridians voted in favor of a ballot initiative entitled "Lobbying and Abuse of Office by Public Officers."[2] ECF No. [36-1]. Consequently, Article 2, Section 8 of the Florida Constitution was amended to place significant limits on compensated lobbying by current and former "public officer[s]," whom the Anti-Lobbying Amendment defines as:

> a statewide elected officer, a member of the legislature, a county commissioner, a county officer pursuant to Article VIII or county charter, a school board member, a superintendent of schools, an elected municipal officer, an elected special district officer in a special district with ad valorem taxing authority, or a person serving as a secretary, an executive director, or other agency head of a department of the executive branch of state government.

*Id*. § 8(f)(1).

Section 8(f)(2) prohibits public officers from engaging in compensated lobbying while in office:

> (2) A public officer shall not lobby for compensation on issues of policy, appropriations, or procurement before the federal government, the legislature, any state government body or agency, or any political subdivision of this state, during his or her term of office.

Art. 2 § 8(f)(2), Fla. Const. (the "In-Office Restrictions").

Section 8(f)(3) extends the lobbying restrictions "for a period of six years after vacation of the public position." Art. 2 § 8(f)(3), Fla. Const. (the "Post-Office Restrictions"). However, unlike

---

[2] Florida Department of State, Division of Election, November 6, 2018 General Election Official Results, *available at* https://results.elections.myflorida.com/.

the In-Office Restrictions, the Post-Office Restrictions are tailored depending on the public officer's former position:

> a.   A statewide elected officer or member of the legislature shall not lobby the legislature or any state government body or agency.
>
> b.   A person serving as a secretary, an executive director, or other agency head of a department of the executive branch of state government shall not lobby the legislature, the governor, the executive office of the governor, members of the cabinet, a department that is headed by a member of the cabinet, or his or her former department.
>
> c.   A county commissioner, a county officer pursuant to Article VIII or county charter, a school board member, a superintendent of schools, an elected municipal officer, or an elected special district officer in a special district with ad valorem taxing authority shall not lobby his or her former agency or governing body.

*Id.* § 8(f)(3).

The Anti-Lobbying Amendment authorizes the Florida Legislature to enact implementing legislation "including, but not limited to, defining terms and providing penalties for violations." *Id*. § 8(f)(5). On May 26, 2022, the Implementing Statutes were signed into law. Implementation of the Constitutional Prohibition Against Lobbying by a Public Officer, 2022 Fla. Sess. Law Serv. Ch. 2022-140 (C.S.C.S.H.B. 7001) at Sec. 3. The Implementing Statutes create penalties for violations of the Anti-Lobbying Amendment, including "[p]ublic censure and reprimand," "[a] civil penalty not to exceed $10,000," and "[f]orfeiture of any pecuniary benefits received for conduct that violates this section." Fla. Stat. § 112.3122(4). The Implementing Statutes went into effect on December 31, 2022. *Id.* § 112.3122(1).

On December 21, 2022, Plaintiffs filed their Complaint, which consists of two Counts. ECF No. [1]. In Count I, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 that the Lobbying Restrictions are unconstitutional and a permanent injunction pursuant to 28 U.S.C. § 2202. *Id.* at 14-16. In Count II, Plaintiffs assert violations of the First and Fourteenth Amendment

through the vehicle of 42 U.S.C. § 1983. *Id*. at 17-18. In addition to Plaintiffs' request for a declaratory judgment and injunction, the Complaint requests "compensatory damages" and costs, including attorneys' fees. *Id*. at 18.

On January 31, 2023, Defendants filed their Motion to Dismiss. ECF No. [44]. Therein, they argue that (A) Plaintiffs lack standing to challenge the Lobbying Restrictions; (B) the named Defendants are improper; (C) Count I fails to state an independent claim for relief; (D) Count II fails to allege a plausible Equal Protection claim; and (E) Eleventh Amendment immunity bars claims for compensatory damages and claims arising under the Florida Constitution. *See generally id*.

In Response, Plaintiffs argue that (A) every named Plaintiff except Crystal Wagar has standing; (B) all of the Defendants are proper; (C) Count I sufficiently states a claim under the Declaratory Judgment Act; and (D) Count II sufficiently alleges speech-related discrimination in violation of the Equal Protection clause. *See generally* ECF No. [47]. In response to (E) Defendants' Eleventh Amendment arguments, Plaintiffs withdraw their claims for compensatory damages and clarifies that they are not asserting any claims arising under the Florida Constitution. *See id.* at 19 n.9.

## II.    LEGAL STANDARD

### A.    Standing

A motion to dismiss for lack of standing has the same effect as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg. Healthcare Sys., Inc*., 524 F.3d 1229, 1232 (11th Cir. 2008). "For purposes of ruling on a motion to dismiss for want of standing," the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*,

422 U.S. 490, 501 (1975) (citation omitted). In addition, all reasonable inferences must be drawn in favor of the plaintiff. *Glyn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022). "If, when it addresses the standing issue, the court has facts beyond the four corners of the complaint before it . . . the court may consider such facts." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1206 n.50 (11th Cir. 1991).

### B.     Eleventh Amendment Immunity

The Eleventh Amendment confirms that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (quotation marks omitted). "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Id.* (citation omitted). However, "[t]he landmark case of *Ex parte Young*, 209 U.S. 123 (1908), created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Id.* "The Supreme Court [has] made clear that the way to bring such a suit – the only way to avoid the shield of sovereign immunity – is to bring a suit for prospective injunctive relief against the official charged with enforcing the law." *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).

### C.     Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

## III.    DISCUSSION

The Court analyzes in turn Defendants' arguments regarding (A) Plaintiffs' standing, (B) Defendants' immunity, and (C) the sufficiency of Plaintiffs' claims.

### A.    Plaintiffs' Standing

Defendants argue that Plaintiffs lack Article III standing because they have not adequately alleged that they intend to engage in activity arguably covered by the Lobbying Restrictions. ECF No. [44] at 4-5. Defendants additionally argue that, to the extent any of the Plaintiffs have standing to challenge the provisions of the Lobbying Restrictions that apply to county and municipal officers, Plaintiffs lack standing to challenge the provisions that apply to "statewide elected officer[s]" and heads of executive agencies. *Id.* at 7. In Response, Plaintiffs concede that Crystal Wagar lacks standing because she resigned before the Lobbying Restrictions went into effect, yet

contend that all other Plaintiffs have standing because the Lobbying Restrictions are chilling their First Amendment rights to engage in lobbying. *See* ECF No. [47] at 4, 5 n.2.

To have standing, Plaintiffs bear the burden of alleging an "'injury in fact' – an invasion of a legally protected interest that is both (1) 'concrete and particularized' and (2) 'actual or imminent, not conjectural or hypothetical.'" *Support Working Animals, Inc. v. Governor of Fla*., 8 F.4th 1198, 1201 (11th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Courts apply "the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) (citation omitted). "Thus, it is well-established that an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences. In such an instance, the injury is self-censorship." *Id*. (cleaned up).

"A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision." *CAMP Legal Def. Fund. Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006). The overbreadth doctrine allows plaintiffs "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). To succeed on a First Amendment overbreadth challenge, the plaintiff must show that a "substantial number of [the statute]'s applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotation marks omitted).

As the Eleventh Circuit explained in detail in *CAMP Legal Defense Fund*, "injury under one provision" of a statute is not "sufficient to confer standing on a plaintiff to challenge all provisions of [the statute]." 451 F.3d at 1273. Accordingly, even in a First Amendment overbreadth challenge, a plaintiff must "establish injury in fact as to each provision" that is challenged in the lawsuit. *Id.* at 1273 (citations omitted). To do so, a plaintiff must sufficiently allege that he "'has sustained or is immediately in danger of sustaining a direct injury as the result of" each provision[.]" *Id*. at 1274 (quoting *Laird v. Tatum*, 408 U.S. 1, 13 (1972)).

Here, the Lobbying Restrictions include restrictions on lobbying by current public officers, Art. 2, Section 8(f)(2), Fla. Const. (the "In-Office Restrictions"), and lobbying restrictions on former public officers, *see id.* § 8(f)(3) (the "Post-Office Restrictions"). In accordance with the Eleventh Circuit's instructions in *Camp Legal Defense Fund*, the Court concludes that standing to challenge one set of Lobbying Restrictions does not necessarily confer standing to challenge the other. For example, as discussed below, a currently serving public officer may have standing to challenge the In-Office Restrictions yet fail to establish standing to challenge the Post-Office restrictions. Conversely, a former public officer (who left office on or after December 31, 2022) would have standing to challenge the Post-Office Restrictions but not the In-Office Restrictions.

Thus, the Court analyzes whether each of the named Plaintiffs has established standing to challenge the In-Office Restrictions, the Post-Office Restrictions, or both.

### i.   René Garcia

According to the Complaint, "Plaintiff René Garcia is a Miami-Dade County Commissioner elected in 2020[.]" ECF No. [1] ¶ 9. He "is also Executive Vice President of New Century Partnership, LLC, a business consulting firm he co-founded whose services include lobbying and government affairs advisory services." *Id.* "Mr. Garcia anticipates providing

immediate lobbying services to his clients with New Century." *Id.* In a Declaration filed in support of Plaintiffs' Motion for Preliminary Injunction,[3] Garcia asserts that the Lobbying Restrictions will "improperly limit [his] ability to advocate before any government agencies due to the fact that [he is] currently serving as a Miami-Dade County Commissioner." ECF No. [19-3] ¶ 5.

Defendants argue that Garcia's allegations are deficient because he does not specifically allege that he wants to lobby for clients on the three issues targeted by the Lobbying Restrictions: "issues of policy, appropriations, or procurement." ECF No. [44] at 6. However, in light of the Implementing Statutes' broad definitions of the terms "issue," "policy," and "procurement," *see* Fla. Stat. § 112.3121(7-9), and the Eleventh Circuit's instruction to "apply the injury-in-fact requirement most loosely where First Amendment rights are involved," *Harrell*, 608 F.3d at 1254, Garcia has sufficiently alleged a reasonable fear that his First Amendment rights are chilled by the Lobbying Restrictions' limits on his "ability to advocate before [ ] government agencies." *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (cleaned up)). Accordingly, Garcia has standing to challenge the In-Office Restrictions.

However, Garcia has not alleged that he ever intends to leave public office,[4] or that he intends to continue his lobbying practice when he does so. Because Garcia does not allege that the Post-Office Restrictions have caused or will cause him injury, he has failed to establish standing

---

[3] The Court may consider this and the other Plaintiffs' declarations in considering Defendants' motion to dismiss for lack of standing. *Cone*, 921 F.2d at 1206 n.50.

[4] Prior to becoming Miami-Dade Commissioner, Garcia "served as a Councilman with the City of Hialeah and as a State Senator and as a member of the Florida House of Representatives." ECF No. [1] ¶ 9. Thus, his allegations indicate that he is a long-serving public officer, with no intention to immediately leave public office.

to challenge the Post-Office Restrictions.

### ii. Javier Fernández

Plaintiff Javier Fernández "was elected as Mayor of City of South Miami in 2022." ECF No. [1] ¶ 10. "Previously, he served as a member of the Florida House of Representatives." *Id*. He is an attorney who "frequently represents clients before county and municipal boards and agencies." *Id*. ¶ 10. The Court agrees with Defendants that Fernández's allegations within the Complaint are insufficient, given that the Lobbying Restrictions explicitly exempt "[r]epresentation of a person on a legal claim cognizable in a court of law, in an administrative proceeding, or in front of an adjudicatory body[.]" Fla. Stat. § 112.3121(12)(b)(4).

However, Fernández alleges additional relevant facts in his Supplemental Declaration in support of Plaintiffs' Motion for Preliminary Injunction. ECF No. [42-1]. Therein, Fernández explains that, due to his fear of enforcement of the Lobbying Restrictions, he was forced to decline representation of a "longtime client to help negotiate a procurement matter on its behalf with another municipality." *Id*. ¶ 7. He describes a separate representation involving "solicitation of a tax increment financing request" that he declined for fear of running afoul of the Lobbying Restrictions. *Id*. ¶ 8. He asserts that, last year, he "obtained a legislative modification to a County's land development regulations," a type of representation that "falls within the scope of impermissible lobbying activities. *Id.* ¶ 9.

In their Reply, Defendants do not address whether the allegations within Fernández's Supplemental Declaration suffice to establish standing. *See generally* ECF No. [50]. The Court concludes that Fernández has sufficiently alleged "that he seriously wishes to engage in expression that is "***at least arguably forbidden*** by the pertinent law[.]" *Harrell*, 608 F.3d at 1260 (emphasis added in *Harrell*) (quoting *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922

F.2d 756, 762 (11th Cir. 1991)). Accepting as true Fernández's allegations, he reasonably fears that representing a client "to help negotiate a procurement matter" would run afoul of the Lobbying Restrictions' prohibition against compensated lobbying on an "[i]ssue of procurement." Fla. Stat. § 112.3121(9). Therefore, Fernández has sufficiently alleged a chilling effect on his First Amendment rights. *Harrell*, 608 F.3d at 1254. Accordingly, Fernández has standing to challenge the In-Office Restrictions.

Like Garcia, however, Fernández has not alleged that he will ever leave public office or that he will be affected by the Post-Office Restrictions if and when he does so. *See* ECF Nos. [1] ¶ 10, [19-4] (Declaration of Javier Fernández), [42-1] (Supplemental Declaration of Javier Fernández). As such, he has not established standing to challenge the Post-Office Restrictions.

### iii.    Mack Bernard

Plaintiff Mack Bernard is an attorney who has been a Palm Beach County Commissioner since 2016. ECF Nos. [1] ¶ 12; [19-6] ¶¶ 2, 4. He asserts that he "advise[s] clients on a variety of matters, including tax and real estate," and he fears the Lobbying Restrictions will inhibit his legal practice. ECF No. [19-6] ¶ 4.

However, Bernard has not alleged that he currently does any work that might fall within the Implementing Statutes' definition of "Lobby for compensation," which explicitly excludes "[r]epresentation of a person on a legal claim cognizable in a court of law, in an administrative proceeding, or in front of an adjudicatory body, including representation during prelitigation offers, demands, and negotiation[.]" Fla. Stat. § 112.3121(12)(b)(4). Plaintiffs are correct that the injury-in-fact requirement is applied "most loosely where First Amendment rights are involved," but a plaintiff must still establish "that he seriously wishes to engage in expression that is *at least arguably forbidden* by the pertinent law[.]" *Harrell*, 608 F.3d at 1254, 1260 (quotation marks

omitted) (emphasis in the original). Put differently, the plaintiff's concern that his speech will be chilled must be objectively reasonable. *ACLU v. The Florida Bar*, 999 F.2d 1486, 1494 & n.13 (11th Cir. 1993). Bernard has failed to plausibly allege that his legal practice, which consists of advice to "clients on a variety of matters, including tax and real estate," will in any way be affected by the In-Office Restrictions. ECF No. [19-6] ¶ 4.

Regarding the Post-Office Restrictions, Bernard alleges that he "intends to advocate before Palm Beach County and its agencies commencing two years after the conclusion of his public service, and more immediately with respect to other lobbying activities." ECF No. [1] ¶ 12. The fact that Bernard has been serving since 2016 suggests that he is a long-term public officer with no *imminent* intention of engaging in post-service "lobbying activities." *Id.* Bernard's "'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Accordingly, the Court concludes that Bernard has failed to establish standing to challenge the Lobbying Restrictions.

### iv.   William Proctor

Plaintiff William Proctor has served as a Leon County Commissioner since 1996, and he "intends to advocate before Leon County and its agencies starting two years after the conclusion of his public service, and more immediately with respect to other lobbying activities." ECF No. [1] ¶ 13. Proctor has not filed an affidavit in support of Plaintiffs' Motion for Preliminary Injunction.

Proctor's allegations are insufficient to establish standing in this case. He has not alleged that he intends to engage in lobbying while serving as a County Commissioner, so he lacks standing to challenge the In-Office Restrictions. As for the Post-Office Restrictions, Proctor has

given no indication as to when his public service will conclude. *See* ECF No. [1] ¶ 13. Like Bernard, he appears to be a long-serving public officer with no *imminent* intention of engaging in post-service "lobbying activities." ECF No. [1] ¶ 13. Proctor's "'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury[.]" *Lujan*, 504 U.S. at 564.

In sum, the Court concludes that Plaintiffs Garcia and Fernández have established standing to challenge the In-Office Restrictions, but not the Post-Office Restrictions. Plaintiffs Bernard and Proctor do not have standing to challenge any aspect of the Lobbying Restrictions.

### v.      The Scope of Plaintiffs' Standing

Defendants argue that Plaintiffs Garcia and Fernández "lack standing to challenge § 8(f)(2) to the extent it applies to public officers other than county commissioners and elected municipal officers." ECF No. [44] at 7. Defendants offer no authority in support of this argument. By its plain terms, § 8(f)(2) applies to any currently serving "public officer," regardless of their position. The Court interprets Defendants' argument to be an attempt to limit Plaintiffs' standing to as-applied challenges to the In-Office Restrictions, as opposed to a facial challenge.

The Court agrees with Plaintiffs that a facial overbreadth challenge is appropriate in these circumstances. Plaintiffs have plausibly alleged – and supported with affidavits – that the In-Office Restrictions "substantially abridge[ ] the First Amendment rights of parties not before the court[.]" *CAMP Legal Defense Fund*, 451 F.3d at 1273 (quotation marks omitted). Such parties include individuals like Crystal Wagar and former Miami-Dade School Board Member Lubby Navarro, who allegedly vacated public office rather than forego their First Amendment rights, *see* ECF No. [42-2], and individuals like nonparty Broward County Commissioner Steven Geller, whose First

Amendment rights are allegedly being chilled by the In-Office Restrictions. *See* ECF No. [42-3] (Declaration of Steven Geller).

In sum, the Court concludes that René Garcia and Javier Fernández have established Article III standing to bring facial and as-applied challenges to the In-Office Restrictions, Art. 2 § 8(f)(2), Fla. Const. However, no Plaintiff has established standing to challenge the Post-Office Restrictions.

## B.  Defendants' Immunity

Defendants argue that Plaintiffs have named immune or otherwise incorrect parties in this case. ECF No. [44] at 8. Defendants concede that the Chairman of the Commission of Ethics ("COE") is a proper Defendant in this case. *Id*. at 9. However, they argue for dismissal of all remaining Defendants – the Attorney general, Chief Financial Officer, and other members of the COE. *Id*. at 8-12. Defendants argue that those parties are improper parties under *Ex parte Young* and because Plaintiffs' alleged injuries are not traceable to those Defendants' actions. *Id*. at 10-12. In Response, Plaintiffs argue that Defendants misapply *Ex parte Young* and its progeny and assert that all of the named Defendants have some connection with the enforcement of the challenged law. ECF No. [47] at 12-16.

Under the *Ex parte Young* doctrine, a plaintiff may sue to challenge the constitutionality of a state official's action in enforcing a state law. *See Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022). "The Supreme Court [has] made clear that the way to bring such a suit – the only way to avoid the shield of sovereign immunity – is to bring a suit for prospective injunctive relief against the official charged with enforcing the law." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). Within the context of a pre-enforcement challenge to a statute, the causation element of standing requires the Plaintiff to show, "at the very least, that the official has the authority to

enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Support Working Animals*, 8 F.4th at 1201 (citations omitted).

Florida Statute § 112.3122 sets forth how the Lobbying Restrictions shall be enforced. First, the COE is tasked with investigating and finding whether there has been a violation of the Lobbying Restrictions. Fla. Stat. § 112.3122(3). The COE "must report its findings and recommendations for appropriate action to the Governor, who has the power to invoke any of the penalties[.]" *Id.* Those potential penalties include "[p]ublic censure and reprimand," "[a] civil penalty not to exceed $10,000," and "[f]orfeiture of any pecuniary benefits received for conduct that violates" the Lobbying Restrictions. *Id.* § 112.3122(4)(a-c). "The Attorney General and Chief Financial Officer are independently authorized to collect any penalty imposed[.]" *Id.* § 112.3122(5).

### i.       The Attorney General and Chief Financial Officer

Regarding the Attorney General and Chief Financial Officer, Defendants direct the Court to *Support Working Animals*, 8 F.4th at 1202-03, wherein the Eleventh held that the Attorney General did not have authority to enforce Article 10, Section 32 of the Florida Constitution. As Plaintiffs point out, however, this case is easily distinguishable from *Support Working Animals*. ECF No. [47] at 16. The legislation at issue in *Support Working Animals* explicitly "vest[s] civil-enforcement authority *outside* the Attorney General's Office." 8 F.4th at 1203 (emphasis added). Here, by contrast, Florida Statute § 112.3122(5) explicitly authorizes both the Attorney General and Chief Financial Officer to collect penalties imposed under the Lobbying Restrictions. *Compare with Lewis v. Governor of Ala.*, 944 F.3d 1287, 1299 (11th Cir. 2019) (en banc) ("The fact that the Act itself doesn't contemplate enforcement by the Attorney General counts heavily against plaintiffs' traceability argument."). Defendants provide no legal authority for the dubious

position that "[t]he mere act of collecting a fine imposed by another entity" does not constitute enforcement. ECF No. [50] at 4. Enjoining the Attorney General and Chief Financial Officer "would be effectual" because they are the sole entities authorized to collect monetary penalties under the Lobbying Restrictions. *Support Working Animals*, 8 F.4th at 1201 (citations omitted).

The Court concludes that the Attorney General and Chief Financial Officer are properly named Defendants.

### ii.    Members of the COE

Defendants present two arguments as to why all members of the COE except for the Chairman should be dismissed. ECF No. [44] at 8-9. First, According to Defendants, *Ex parte Young* only permits a claim against the head of the COE, not against its individual members. ECF No. [44] at 8 (citing *Fla. Hosp. Ass'n v. Viamonte*, No. 4:08-cv-312, 2008 WL 5101755 (N.D. Fla. Nov. 26, 2008)). Plaintiffs correctly respond that the single case cited by Defendants – *Viamonte* – does not support the proposition that only the head of the COE can be sued under *Ex parte Young.* The *Viamonte* court held that the heads of two agencies were appropriate defendants in that case, but it did not consider whether other members of those agencies were appropriate defendants. *Viamonte*, 2008 WL 5101755 at *1. By contrast, the authorities provided by Plaintiffs squarely support their position that they "may proceed against the individual commissioners in their official capacities, pursuant to the doctrine of *Ex parte Young*[.]" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also MCI Telecomms. Corp. v. BellSouth Telecomms. Inc.*, 298 F.3d 1269, 1272 (11th Cir. 2002) (permitting an *Ex parte Young* lawsuit to proceed against individual members of the Florida Public Service Commission).

Second, Defendants assert that the individual members of the COE are not properly named because they have no power to enforce the Lobbying Restrictions. ECF No. [44] at 9 (citing *Boglin*

*v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1266 (N.D. Ala. 2018)). However, the *Boglin* case cited by Defendants does not support their position. *Boglin* held that individual members of a board of trustees were immune from suit because the board of trustees did not have the authority to grant plaintiff the relief sought. 290 F. Supp. 3d at 1266. Here, by contrast, Fla. Stat. § 112.3122(3) explicitly tasks the COE with enforcing the Lobbying Restrictions. Accordingly, enjoining the individual members of the COE would redress Plaintiffs' injury, "either 'directly or indirectly.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (quoting *Lewis*, 944 F.3d at 1301). As noted above, both the Supreme Court and Eleventh Circuit have approved *Ex parte Young* suits against the individual members of a commission in similar circumstances. *Verizon Md.*, 535 U.S. at 645; *MCI Telecomms. Corp.*, 298 F.3d at 1272.

In sum, Plaintiffs' injuries are traceable to Defendants' role in enforcing the Lobbying Restrictions, and *Ex parte Young* permits Plaintiffs to bring this suit against them.

### C.    Claims for Relief

Having concluded that two Plaintiffs have standing, and all of the named Defendants are proper, the Court turns to Defendants' arguments regarding Plaintiffs' individual claims. Defendants raise three arguments: (i) Count I must be dismissed because the Declaratory Judgment Act does not create a federal cause of action; (ii) Count II fails to allege a claim under the Fourteenth Amendment's Equal Protection Clause; and (iii) the Eleventh Amendment bars Plaintiffs' claims for compensatory damages and any claims arising under the Florida Constitution. ECF No. [44] at 12-15. The Court addresses Plaintiffs' responses below.

### i.       Count I

Count I seeks a declaration that the Lobbying Restrictions are unconstitutional, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, as well as a permanent injunction prohibiting their enforcement under 28 U.S.C. § 2202. Defendants argue that "[d]eclaratory judgments and injunctions are remedies, not causes of action." ECF No. [44] at 13 (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010)). In Response, Plaintiffs concede that "the Declaratory Judgment Act itself is 'procedural,'" but argue that it nonetheless states a valid claim for relief. ECF No. [47] at 17-18.

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. A district court's ability to grant relief under the Act is permissive, and while the Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights[,] it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citation omitted). The Court has "exceptionally broad discretion in deciding whether to issue a declaratory judgment[.]" *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) (citation omitted). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Here, Count I seeks a declaration that the Lobbying Restrictions "impermissibly infringe upon the core political speech rights, associational rights and petitioning rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution." ECF No. [1] ¶ 45. Likewise, Count II asserts violations of "Plaintiffs' core political speech rights, associational rights

and petitioning rights under the First Amendment, as incorporated against Defendants by the Fourteenth Amendment," in addition to "their rights to equal protection of the laws protected by the Fourteenth Amendment." *Id*. ¶ 57. Count I asserts no rights separate from those set forth in Count II. Plaintiffs' success on Count II will entitle them to the declaration and injunction that ostensibly form the basis of Count I. Accordingly, the Court finds that Count I "serve[s] no useful purpose" because the relief sought therein is fully duplicative of the relief sought in Count II. *Wilton*, 515 U.S. at 288. Count I is therefore subject to dismissal. *See, e.g.*, *MSPA Claims 1, LLC v. Liberty Mut. Ins.*, No. 15-cv-21417-UNGARO, 2015 WL 4511284, at *3 (S.D. Fla. July 22, 2015) (dismissing a duplicative count for declaratory judgment).

### ii.    Count II's Reference to Equal Protection

In Count II, Plaintiffs assert that the Lobbying Restrictions violate "Plaintiffs' core political speech rights, associational rights and petitioning rights under the First Amendment, as incorporated against Defendants by the Fourteenth Amendment, and their rights to equal protection of the laws protected by the Fourteenth Amendment." ECF No. [1] ¶ 57. Defendants argue that the Complaint contains "no allegations that show a plausible equal protection claim." ECF No. [44] at 13. In Response, Plaintiffs argue that their Equal Protection rights are violated because the Lobbying Restrictions unlawfully discriminate against the First Amendment rights of a single group of people – public officials. ECF No. [47] at 19.

"The Equal Protection Clause of the Fourteenth Amendment states that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a mandate that all similarly situated persons be treated alike." *Hollywood Comm. Synagogue, Inc. v. City of Hollywood, Fla.*, 430 F. Supp. 2d 1296, 1322 (S.D. Fla. 2006) (quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)). Defendants are correct that Plaintiffs'

Case No. 22-cv-24156-BLOOM/Otazo-Reyes

Complaint does not specify any "similarly situated persons." The only allegation that arguably supports a freestanding Equal Protection claim is a conclusory assertion that the Lobbying Restrictions "unconstitutionally discriminate against" Plaintiffs. ECF No. [1] ¶ 8. Thus, Defendants are correct that Plaintiffs have not sufficiently alleged a freestanding Equal Protection claim.

However, Plaintiffs have adequately stated claims under the First Amendment, and Plaintiffs cite two Supreme Court cases that considered Equal Protection claims "closely intertwined with First Amendment interests." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 94 (1972); *see also Carey v. Brown*, 447 U.S. 455, 461 (1980) ("When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." (citing, inter alia, *Mosley*, 408 U.S. at 98-99)). More recent Supreme Court opinions analyze regulations of speech solely under the First Amendment, without reference to the Equal Protection Clause, *see, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), and at least one Supreme Court opinion disapproved of how the *Mosley* court "fused the First Amendment into the Equal Protection Clause[.]" *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 384 n.4 (1992).

Nonetheless, Defendants do not argue that *Mosley* and *Carey* are no longer good law, and Count II's reference to "equal protection" is consistent with the analysis of those cases. ECF No. [1] ¶ 57. The present motion-to-dismiss stage is not the appropriate juncture to resolve whether the Supreme Court has moved away from *Mosley* and *Carey*'s analysis. Count II's reference to the Equal Protection Clause may remain.

     **iii.**     **Compensatory Damages and Claims Under the Florida Constitution**

Lastly, Defendants assert that the Eleventh Amendment bars Plaintiffs' claims for compensatory damages and claims under the Florida Constitution. ECF No. [44] at 13-15. In Response, Plaintiffs concede that the Eleventh Amendment bars their claims for compensatory damages, and they clarify that they "do not assert a claim for relief under the Florida Constitution." ECF No. [47] at 18 n.9. Plaintiffs' concession clarifies that the Complaint's single reference to the "Florida Declaration of Rights" within the Introduction is not intended to state a claim under the Florida Constitution. ECF No. [1] ¶ 8. The Complaint's claim for compensatory damages is dismissed with prejudice.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [44]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Count I of the Complaint, ECF No. [1], is **DISMISSED WITH PREJUDICE**.

3. The Complaint's claim for compensatory damages is **DISMISSED WITH PREJUDICE**.

4. Defendants shall file an Answer to the Complaint **no later than April 19, 2023**.

    **DONE AND ORDERED** in Chambers at Miami, Florida, on April 5, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record